IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHRISTOPHER BARTOLOME, | ) | CIVIL NO. 06-00176 SOM/LEK |
| | ) | |
| Plaintiff, | ) | ORDER DENYING OFFICERS' MOTION |
| | ) | FOR SUMMARY JUDGMENT AND |
| vs. | ) | CONTINUING CITY'S MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| CITY AND COUNTY OF HONOLULU; | ) | |
| COLBY KASHIMOTO, Police | ) | |
| Officer; DARREN CACHOLA, | ) | |
| Police Officer; JOHN DOES 1- | ) | |
| 10, Police Officers, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER DENYING OFFICERS' MOTION FOR SUMMARY JUDGMENT
AND CONTINUING CITY'S MOTION FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

          This is a case about alleged police brutality and an
alleged failure to provide appropriate medical assistance.
Defendants, who are Honolulu Police Department ("HPD") police
officers, Colby Kashimoto and Darren Cachola (collectively, "the
Officers"), and Defendant City and County of Honolulu ("the
City") move for summary judgment as to all claims asserted
against them in the First Amended Complaint ("Complaint") by
Plaintiff Christopher Bartolome.

          In the Complaint, Bartolome asserts that the Officers
violated his Fourth Amendment rights by arresting him without
probable cause and by using excessive force in the arrest.
Bartolome also asserts various state claims against the Officers

based on the same incident: (1) negligence; (2) assault and battery; (3) intentional infliction of emotional distress; and (4) negligent infliction of emotional distress.  In addition, Bartolome brings claims under 42 U.S.C. § 1983 against the City, arguing that the City has a policy of failing to train and/or supervise its officers on providing medical assistance and on the appropriate use of force and that the City has a custom of endorsing officers' excessive use of force by failing to investigate their actions or discipline them.  Bartolome seeks both damages and injunctive relief, including punitive damages, from the Officers.

There are two motions before the court, one by the Officers ("Officer Motion"), the other by the City ("City Motion").  In their motion for summary judgment, the Officers contend that they are entitled to qualified immunity as to the § 1983 claim of excessive force against them.  They argue that Bartolome's Fourth Amendment rights were not violated by an excessive use of force or, alternatively, that the Officers could have reasonably believed that they did not violate Bartolome's constitutional rights.  Regarding the state law claims, the Officers argue that they are protected by the qualified or conditional privilege recognized by Hawaii law.  The Officers also claim that Bartolome is not entitled to punitive damages because he fails to meet his burden in establishing that the

Officers' conduct was wanton, oppressive, or malicious.  The
court concludes that genuine issues of material fact preclude
summary judgment on both the § 1983 claim and state claims.
Accordingly, the Officers' Motion is denied.

The City contends in its motion that it is entitled to
summary judgment as to Bartolome's § 1983 claim because the
Officers did not violate Bartolome's constitutional rights and
because Bartolome does not have any evidence that the City
provides inadequate training or fails to investigate or
discipline HPD officers for the use of excessive force.  Because
there is a discovery dispute pertaining to the claims against the
City, the court continues the hearing on the City's Motion until
the discovery issues have been resolved by the Magistrate Judge.

II.      LEGAL STANDARD.

The court reviews the motions under the Federal Rules
of Civil Procedure as amended effective December 1, 2007.  As the
amendments to the rules in issue here were stylistic only, the
court relies on authorities construing the previous version of
the applicable rules.

Rule 56(c) of the Federal Rules of Civil Procedure
provides that summary judgment shall be granted when "the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c); see also Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment must be granted against a party that fails to demonstrate facts to establish an essential element at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead must "set forth specific facts showing that there is a genuine issue for trial." Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

"A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); accord Addisu, 198 F.3d at 1134 ("There must be enough

4

doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion."). "A scintilla of evidence or evidence that is merely colorable or not significantly probative [does not] present a genuine issue of material fact." Addisu, 198 F.3d at 1134 (citation omitted). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587).

III.    FACTUAL BACKGROUND.

On March 31, 2004, at approximately 10:30 p.m., Officers Kashimoto and Cachola, traveling westbound on the H-1 freeway, saw three motorcycles going faster than other traffic in the area. Declaration of Colby Kashimoto (Jan. 16, 2008) ("Kashimoto Decl.") ¶ 5; Declaration of Darren Cachola (Jan. 22, 2008) ("Cachola Decl.") ¶ 5; see also Deposition of Christopher C. Bartolome (Aug. 29, 2007) ("Bartolome Dep.") at 80 (admitting to driving "at least" 85 miles an hour). Officer Kashimoto watched as the three motorcycles cut from the outermost lane to the innermost lane on the freeway, causing other cars to slam on their brakes. Kashimoto Decl. ¶¶ 5-6.

The lead motorcycle, which the Officers later learned was being driven by Bartolome, executed a "wheelie," during which the front tire of the motorcycle was raised for about three to four seconds.  Kashimoto Decl. ¶ 2; see also Opp'n to Officer Motion at 2 ("Plaintiff admits he made a 'wheelie' on the freeway, where the front tire of his motorcycle was raised for a few seconds.").  Officer Cachola pulled in front of Bartolome while Officer Kashimoto closed in from behind.  The Officers say they tried to get Bartolome to pull over by gesturing, yelling, and turning on their lights and sirens.  Kashimoto Decl. ¶ 7.

Bartolome says that an officer cut him off and that he had to swerve to avoid hitting him.  See Bartolome Dep. at 76; Declaration of Christopher C. Bartolome (Feb. 11, 2008) ("Bartolome Decl.") ¶ 4.  Although Bartolome does not recall hearing either sirens or seeing HPD lights, he knew that an HPD officer was attempting to pull him over.  Bartolome Dep. at 68. Bartolome says that he "freaked out" and, instead of pulling over, "gunned it" to "create some distance" between himself and the officer.  See id. at 76, 78.  The Officers saw Bartolome pull away at a high speed to the outermost lane and noticed that Bartolome's motorcycle did not have a license plate.  Kashimoto Decl. ¶ 7; Cachola Decl. ¶ 7.  According to the Officers, Bartolome was driving hazardously in his attempt to flee. Kashimoto Decl. ¶ 8; Cachola Decl. ¶ 8.

6

Bartolome alleges that, although he was initially "freaking out," he later calmed down and pulled over at a safe spot.  Bartolome Dep. at 78.  He says that he thought it was unsafe to stop on the highway so he got off the freeway at the Waipahu off-ramp and pulled over.  Id. at 76, 78; Kashimoto Decl. ¶ 9.  Officer Kashimoto followed Bartolome until Bartolome stopped at the intersection of Kahualli and Kahuanui Streets.  Kashimoto Decl. ¶ 9.

Officer Kashimoto claims that Bartolome saw him approaching and tried to flee again by speeding up.  Officer Kashimoto says this caused him to leap off his motorcycle as soon as he was next to Bartolome and to grab Bartolome so as to physically "effect [Bartolome's] arrest."  Id. ¶ 10.  Bartolome, however, maintains that he was waiting at the intersection of Kahualli and Kahuanui Streets for Officer Kashimoto, and that his engine was off and his motorcycle's kick stand was down.  Bartolome Decl. ¶¶ 6, 9.

Officer Kashimoto claims that, even after he had grabbed Bartolome and told him he was under arrest, Bartolome continued to resist and attempted to escape.  Bartolome allegedly swung his arm at Officer Kashimoto, who says that, in response, he struck Bartolome in the kidney area.  Kashimoto Decl. ¶¶ 10-11.  Officer Cachola arrived at this point and went to Officer Kashimoto's aid.  Officer Cachola says that Bartolome swung at

7

his face, prompting him to strike Bartolome on the right side of his body.  According to Officer Cachola, after 30 to 40 seconds of additional struggling, he and Officer Kashimoto were able to handcuff Bartolome.  Cachola Decl. ¶¶ 9-10.

Bartolome disputes the Officers' account and alleges that he never resisted arrest and was never told by the Officers that he was under arrest.  Instead, Bartolome claims that he remained on the ground, did not attempt to strike either officer, and pleaded with the Officers to stop the beating.  Bartolome says that the two officers continued to beat him for approximately two and a half to three minutes, and that he could not determine whether the Officers used an instrument to beat him because he was facing the ground.  Bartolome Decl. ¶¶ 11-22.

Jessica Rita, who was out on her lanai that evening, witnessed the incident, but her recollection differs from that of either the Officers or Bartolome.  According to Rita, the Officers yelled at Bartolome that he was under arrest, Bartolome tried to resist arrest at one point, there were about seven to nine men in uniform, the alleged beating lasted less than one minute, and four to five officers participated in the alleged beating.  Deposition of Jessica Derpo Rita (Feb. 15, 2008) ("Rita Dep.") at 14, 17, 41-43, 61.  Rita admits that her eyesight is bad and that her observation of the incident was "blurry" because

8

she was not wearing glasses and it was dark at the time.  Id. at
25.

  After Bartolome was handcuffed, he told the Officers he
felt pain and was injured.  Bartolome says Officers Kashimoto and
Cachola then administered a field sobriety test.  Bartolome Decl.
¶¶ 23-25.  He says that other HPD officers took Bartolome to the
Pearl City police station, where Bartolome took yet another field
sobriety test and two intoxilyzer tests, both of which Bartolome
says he passed.  Bartolome claims he was then arrested for
driving under the influence of drugs.  Id. ¶¶ 27-30; see also Ex.
1 (attached to Opp'n to City Motion).

  HPD subsequently took Bartolome to the emergency room
at Kapiolani Medical Center, approximately three hours after the
assault, where the doctor determined that Bartolome had two rib
fractures.  Bartolome Decl. ¶¶ 30-31; see also Ex. 2 (attached to
Opp'n to City Motion).

  Bartolome was brought back to the Pearl City police
station, where he claims Officer Cachola threatened him.
Bartolome Decl. ¶¶ 34-35.  After Bartolome was bailed out of the
police station, Bartolome went to the Kaiser Medical Center,
which confirmed that Bartolome had two fractured ribs.  Also,
laboratory tests failed to identify the existence of any drugs in
Bartolome's system.  Id. ¶¶ 36-38; see also Ex. 3 (attached to
Opp'n to City Motion).

On April 1, 2004, in the afternoon, Officer Kashimoto filed a Use of Force Report with HPD ("Report"), which detailed the incident.  Ex. 7 (attached to Opp'n to City Motion).  In the Report, Officer Kashimoto described Bartolome's conduct and his response.  Officer Kashimoto noted that Bartolome had fled and had taken aggressive action, to which Officer Kashimoto said he responded with physical force.  The Report also noted that there were two HPD officers present during the incident.  See id.

On October 27, 2005,[1] Detective Calvin Tong from HPD's Office of Internal Affairs interviewed Bartolome regarding the March 31, 2004, incident.  See id.

On January 12, 2006, Bartolome filed a written complaint with HPD's Office of Internal Affairs.  See id.  In the description portion, Bartolome incorporated the transcript of the taped interview conducted by Detective Tong.  Id.

On the date of the incident, Officer Cachola had been with HPD for approximately eight years, while Officer Kashimoto had been with HPD for approximately six years.  Kashimoto Decl. ¶ 3; Cachola Decl. ¶ 3.

HPD Policy forbids unreasonable or excessive force, and disciplinary measures are in place for those officers found to

---

[1]  The transcript of the interview states that the interview was conducted on December 5, 2005.  Detective Tong, however, identified the date as October 27, 2005, when he first initiated questioning.

have violated this policy.  Declaration of Fabian M. Loo (Jan. 2008) ("Loo Decl.") ¶ 11.

HPD, in its hiring practices, maintains a policy of screening out candidates who have psychological, behavioral, or emotional problems that might tend to increase an officer's likelihood of being violent.  Declaration of Dave Kajihiro (Jan. 16, 2008) ("Kajihiro Decl.") ¶¶ 6-7.  Officers Cachola and Kashimoto underwent this screening process when hired by HPD, and HPD did not uncover any evidence indicating a tendency to engage in violent behavior.  Id. ¶¶ 9-23.

When officers are first hired, they attend a Recruit Training Course, which includes instruction on arrest tactics, the appropriate use of force, and responses to medical needs. Loo Decl. ¶¶ 6-7, 15-16.  HPD officers are periodically trained on these issues and are made aware of new developments in the law. Id. ¶¶ 9, 14; see also Exs. 11-12 (attached to Opp'n to City Motion).  HPD administers Annual Recall Trainings ("ART") ("ART"), during which officers are instructed about the use of force.  Declaration of Fabian M. Loo (Mar. 25, 2008) ("Second Loo Decl.") ¶¶ 6-7.  Officer Cachola attended five ARTs from 1997 to the date of the incident, and Officer Kashimoto attended three ARTs from 1999 to the date of the incident.  Exs. 11-12 (attached to Opp'n to City Motion).

11

HPD maintains records for all complaints filed and investigations undertaken against HPD officers.  Physical copies of these records are kept for thirty months, and computer records are maintained beyond the thirty-month period.  Declaration of Gerald K. Kaneshiro (Mar. 25, 2008) ("Kaneshiro Decl.") ¶¶ 5-6.

IV.     ANALYSIS.

        A.   The Officers' Motion.

        In Count One of the Complaint, Bartolome alleges the Officers violated his Fourth Amendment right by arresting him without probable cause and subjecting him to excessive force. Bartolome brings this claim directly under the Constitution without reference to 42 U.S.C. § 1983 and seeks monetary damages against the Officers.  The Officers move for summary judgment on the excessive force claim, arguing that the Officers' use of force was reasonable.  In their motion, the Officers do not discuss whether there was probable cause to arrest Bartolome. The Officers also move for summary judgment on the state claims, asserting that they are entitled to a conditional privilege under Hawaii law.

        Although Bartolome brings his claim against the Officers directly under the Constitution, the court construes this as a § 1983 claim, as § 1983 is the vehicle by which a private citizen may seek recovery for violations of federal laws and the United States Constitution.  See 42 U.S.C. § 1983; see

also <u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808, 816 (1985) (noting that § 1983 does not create any substantive rights, but instead "provides remedies for deprivations of rights established elsewhere"); <u>Tatum v. City and County of San Francisco</u>, 441 F.3d 1090, 1094 (9th Cir. 2006) ("[T]o recover damages under 42 U.S.C. § 1983, [the plaintiff] must prove by a preponderance of the evidence that the defendants deprived [him] of a constitutional right under color of state law."). The Officers have also construed Count One as a § 1983 claim.

At the hearing, the Officers argued, for the first time, that they had probable cause to arrest Bartolome. Having never raised this argument in their motion, the court denies summary judgment on this claim. With regard to the excessive force claim, the court concludes that, drawing all inferences in favor of Bartolome, a reasonable jury could conclude that the Officers violated Bartolome's Fourth Amendment right by using excessive force. The court therefore denies the Officers' Motion on Count One.

Because there are genuine issues of material fact on the reasonableness of the force employed, the court also denies summary judgment on all the state claims against the Officers, Counts Five through Nine.

13

1.   <u>§ 1983 Claims.</u>

The Officers argue that they have qualified immunity
with respect to Bartolome's § 1983 claims because (1) they did
not violate Bartolome's Fourth Amendment rights because the use
of force was reasonable; (2) they could have reasonably believed
that they were not violating Bartolome's constitutional rights;
and (3) they employed a "de minimus" and nonactionable force.
Because there are genuine issues of fact regarding whether the
Officers employed a reasonable amount of force, the court denies
summary judgement on this claim.

Section 1983 provides, in relevant part:

> [E]very person who, under color of any
> statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the
> District of Columbia, subjects or causes to
> be subjected, any citizen of the United
> States . . . to the deprivation of any
> rights, privileges, or immunities secured by
> the Constitution and laws, shall be liable to
> the party in an action at law, suit in equity
> or other proper proceeding to redress.

42 U.S.C. § 1983.

"Qualified immunity . . . shields § 1983 defendants
'from liability for civil damages insofar as their conduct does
not violate clearly established statutory or constitutional
rights of which a reasonable person would have known.'"
<u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc)
(quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)); <u>see
also</u> <u>San Jose Charter of the Hells Angels Motorcycle Club v. City</u>

of San Jose, 402 F.3d 962, 971 (9th Cir. 2005).  The qualified
immunity doctrine protects government officials from their
exercise of poor judgment, and fails to protect only those who
are "plainly incompetent or those who knowingly violate the law."
Malley v. Briggs, 475 U.S. 335, 341 (1986).

    The purpose of qualified immunity is to protect
officials from undue interference with their duties and from
potentially disabling threats of liability.  Sinaloa Lake Owners
Ass'n v. City of Simi Valley, 70 F.3d 1095, 1098 (9th Cir. 1994).
The Supreme Court has therefore stated that qualified immunity is
an entitlement not to stand trial or face the other burdens of
litigation.  Saucier v. Katz, 533 U.S. 194, 200 (2001).  The
Supreme Court has cautioned that a ruling on a qualified immunity
defense "should be made early in the proceedings so that the cost
and expenses of trial are avoided where the defense is
dispositive."  Id.

    Saucier held that the qualified immunity analysis is a
two-step process.  First, the court, viewing the facts alleged in
the light most favorable to the party asserting an injury, must
determine whether those facts show that the defendant's conduct
violated a constitutional or statutory right.  Id. at 201.  If no
constitutional or statutory right would have been violated by the
alleged actions, a defendant has qualified immunity.  On the
other hand, "if a violation could be made out on a favorable view

15

of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. This inquiry "must be taken in light of the specific context of the case, not as a broad general proposition." Id. If the law did not put the official on notice that his or her conduct would be clearly unlawful, the official has qualified immunity from the claim. Id. at 202.

> a.   Step 1: Was there a Constitutional
>      Violation?

Bartolome alleges that the Officers used excessive force in apprehending him. "[C]laims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989).

> The Fourth Amendment states:
>
> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment

16

requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (quoting United States v. Place, 462 U.S. 696, 703 (1983)).

The Fourth Amendment's "proper application requires careful attention to the facts and circumstances of each particular case." Id. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Id. In other words, not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must allow for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation. Id. The "reasonableness" inquiry in an excessive force case is an objective one. The "question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id.

The Ninth Circuit has a three-part test for determining the reasonableness of force used. That test balances the "nature

and quality of the intrusion on the individual's Fourth Amendment interests" against the "countervailing governmental interests at stake." Miller v. Clark County, 340 F.3d 959, 964 (9th Cir. 2003) (quoting Graham, 490 U.S. at 396).  First, to assess the Fourth Amendment interest, the court evaluates the "type and amount of force inflicted." Id.; see also Deorle v. Rutherford, 272 F.3d 1272, 1279-81 (9th Cir. 2001).  Second, in determining the governmental interest at stake, the court looks to "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." Miller, 340 F.3d at 964 (citing Graham, 490 U.S. at 396).  Third, the court balances these two interests to determine whether the amount of force was constitutionally reasonable. Id.

Taken in the light most favorable to Bartolome, the evidence raises questions of fact regarding whether the Officers' use of force was reasonable.  First, Bartolome alleges that he was pulled off his motorcycle and that the two Officers beat him, possibly with an instrument, over a period of two and a half to three minutes. See Bartolome Decl. ¶¶ 11-16, 22.  At a minimum, these facts indicate that the Officers used a significant amount of force.  Second, the governmental interest at stake, when all inferences are drawn in favor of Bartolome, did not overcome

18

Bartolome's interest.  Bartolome was being pulled over for a traffic violation and, according to Bartolome, did not resist arrest or strike at the Officers.  He says he was on the ground pleading with the Officers to stop the beating.  Id.  Assuming these circumstances, a reasonable jury could conclude that the Officers' conduct violated Bartolome's Fourth Amendment rights. See e.g., Drummond v. City of Anaheim, 343 F.3d 1052, 1059-60 (9th Cir. 2003) (noting that a trier of fact could find that a Fourth Amendment violation occurred when two police officers pressed their weight onto a suspect who was already lying on the ground, not resisting arrest, and pleading for air); see also Wall v. County of Orange, 364 F.3d 1107, 1111-12 (9th Cir. 2004) (reversing a district court decision to grant summary judgment for police officers on a Fourth Amendment claim when there were disputed issues of material fact that the district court resolved).

At the hearing, the Officers argued that Bartolome's account of the incident was not credible, and that Rita's eyewitness testimony was inconsistent with Bartolome's account. Nevertheless, "[i]n judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 1007).  Faced with contradicting versions of Bartolome's arrest, the court makes no credibility

19

determination, instead drawing all inferences in favor of
Bartolome.

> b.    Step 2: Was the Constitutional Right
>       Clearly Established?

Having determined that, on a favorable view of the
parties' submissions, Bartolome could make out a Fourth Amendment
claim based on excessive force, the court must next determine
whether the right was clearly established.  "The relevant,
dispositive inquiry in determining whether a right is clearly
established is whether it would be clear to a reasonable officer
that his conduct was unlawful in the situation he confronted."
Saucier, 533 U.S. at 202.  "If the law did not put the officer on
notice that his conduct would be clearly unlawful, summary
judgment based on qualified immunity is appropriate."  Id.; see
also Harlow, 457 U.S. at 818.

The Ninth Circuit has been clear that, "in a situation
in which an arrestee surrenders and is rendered helpless, any
reasonable officer would know that a continued use of [force] or
a refusal without cause to alleviate its harmful effects
constitutes excessive force."  LaLonde v. County of Riverside,
204 F.3d 947, 961 (9th Cir. 2000); see also Drummond, 343 F.3d at
1061 (stating that any reasonable officer should have known that
crushing a suspect against the ground when the suspect was not
resisting and was crying out for help constituted an excessive
use of force).  In the present case, the evidence, examined in

the light most favorable to Bartolome, does not present a
borderline case for which summary judgment would be appropriate.
Although the Officers claim that Bartolome was resisting arrest
and fighting back against the Officers, Bartolome says that he
was lying on the ground and submitting to arrest, pleading with
the Officers to stop the alleged beating.  In Bartolome's version
of events, the Officers would clearly be on notice that their
conduct violated the Fourth Amendment.  Accordingly, the court
denies the Officers' Motion for summary judgment on the Officers'
§ 1983 claim.

c.   <u>De Minimus Use of Force.</u>

The Officers also contend that Bartolome cannot
establish a claim for excessive use of force because a "de
minimus use of force is not constitutionally prohibited."
Officers' Motion at 17.  The court rejects this argument, having
already determined that, drawing all inferences in favor of
Bartolome, a jury could find that the Officers' use of force was
excessive.

2.   <u>State Claims.</u>

a.   <u>Qualified or Conditional Privilege.</u>

The Officers argue that, as "non-judicial governmental
officials" who were acting in the performance of their public
duty, they are entitled to a "qualified or conditional privilege"
on all the state law claims asserted against them.  Officers'

21

Motion at 21.  They argue that the record is clear that the
Officers were not motivated by malice and, thus, that all of
Bartolome's state claims should be dismissed.  Id. at 22.

    Hawaii law provides that a nonjudicial government
official has a qualified or conditional privilege with respect to
his or her tortious actions taken in the performance of his or
her public duty.  Towse v. State of Hawaii, 64 Haw. 624, 631, 647
P.2d 696, 702 (1982); Runnels v. Okamoto, 56 Haw. 1, 4, 525 P.2d
1125, 1128 (1974).  This privilege shields all but the most
guilty nonjudicial officials from liability, but not from the
imposition of a suit itself.  Towse, 64 Haw. at 631, 647 P.2d
at 702.  The privilege is the result of the Hawaii Supreme
Court's balancing of competing interests.  It protects the
innocent public servant's pocketbook, yet allows an injured party
to be heard.  See Medeiros v. Kondo, 55 Haw. 499, 504, 522 P.2d
1269, 1272 (1974).

    For a tort action to lie against a nonjudicial
government official, the injured party must allege and
demonstrate by clear and convincing proof that the official was
motivated by malice and not by an otherwise proper purpose.
Towse, 64 Haw. at 631-33, 647 P.2d at 702-03; Medeiros, 55 Haw.
at 504-05, 522 P.2d at 1272.  When a public official is motivated
by malice, and not by an otherwise proper purpose, Hawaii law
provides that the cloak of immunity is lost and the official must

defend the suit the same as any other defendant.  Marshall v.
Univ. of Haw., 9 Haw. App. 21, 37, 821 P.2d 937, 946 (Ct. App.
1991), abrogated on other grounds by Hac v. Univ. of Haw.,
102 Haw. 92, 73 P.3d 46 (2003).

The existence or absence of malice is generally a
question for the jury.  Runnels, 56 Haw. at 5, 525 P.2d at 1129.
However, when the existence or absence of malice is demonstrated
to the court via uncontroverted affidavits or depositions, the
court may rule on the existence or absence of malice as a matter
of law.  See id.

In the present case, there is no dispute that the
Officers are nonjudicial government officials who are eligible
for the qualified or conditional privilege discussed in Towse.
Accordingly, to hold the Officers liable for the state law tort
claims, Plaintiffs must "prove, to the requisite degree, that the
[Officers] had been motivated by malice and not by an otherwise
proper purpose."  Id. at 631, 647 P.2d at 702.

In Count One of the Complaint, Bartolome alleges that
the Officers "maliciously" seized him.  Bartolome also claims
that Officer Cachola threatened him at the Pearl City police
station.  See Bartolome Decl. ¶ 34 ("[Officer] Cachola then
turned to me and said 'You better change the color of your bike'
and 'the next time it happens its [sic] going to be worse.'").
Based on the record before the court, as well as the previous

discussion about the Officers' potential liability for constitutional violations, the court concludes that there is a genuine issue of fact as to whether the Officers were motivated by malice or an improper purpose.  Accordingly, the court denies the Officers' Motion for summary judgment on all of Bartolome's state claims based on conditional privilege.

b.    Assault and Battery.

The Officers move for summary judgment on Bartolome's assault and battery claim, arguing that police officers are not liable for injuries that result from the "use of reasonably necessary force to preserve the peace and maintain order or to overcome resistance to his authority."  Officers' Motion at 20.  The court finds this argument unpersuasive, having already concluded that there remain genuine issues of fact regarding whether the Officers' use of force was reasonable.  The court denies summary judgment on the assault and battery claim.

c.    Punitive Damages.

In a § 1983 case, punitive damages may be awarded "when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others."  Dang v. Cross, 422 F.3d 800, 807 (9th Cir. 2005) (quoting Morgan v. Woessner, 997 F.2d 1244, 1255 (9th Cir. 1993)) (internal quotations omitted).  Under Hawaii law, punitive damages are available if the defendant has

acted wantonly, oppressively, or maliciously.  <u>Quedding v.</u>
<u>Arisumi Brothers., Inc.</u>, 66 Haw. 335, 340, 661 P.2d 706, 710
(Haw. 1983).  Although Bartolome does not specify whether he is
pursuing punitive damages under state or federal law, the court
notes that the standards are the same.  There remains a question
of fact on whether the Officers' use of force was motivated by
malice.  The Officers' Motion on Bartolome's punitive damages
claim is therefore denied.

    B.    <u>The City's Motion.</u>

        In Counts Two through Four of the Amended Complaint,
Bartolome alleges that the City violated 42 U.S.C. § 1983 by
(1) failing to properly train and supervise officers on providing
medical assistance;[2] (2) failing to supervise and train officers
on the appropriate use of force; and (3) maintaining a custom or
policy that endorses the use of excessive force by failing to
investigate and discipline officers who assault citizens.
Complaint ¶¶ 32-34.  The City's Motion seeks summary judgment on
each of these claims, arguing that the Officers' conduct was
reasonable.  Because the court has already found above that an
issue of fact exists as to whether there was a constitutional
violation, the City is unpersuasive on this point.  The City next
argues that Bartolome has no evidence to support these claims.

---

        [2]  At the hearing, Bartolome clarified that he was no longer
pursuing the failure to hire claim originally asserted in Count
Two.

Local governmental bodies such as the County are "persons" that may be sued under § 1983. See Monell v. Dept. of Social Servs., 436 U.S. 658, 690 (1978). However, counties are only liable for injuries that arise from an official policy or custom. Id. at 694 (no respondeat superior liability); accord City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989) (a county is liable under § 1983 only when its policy or custom causes the injury).

A municipality can only be held liable for the actions of its individual employees in one of three situations:

> First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy. Whether a particular official has final policy-making authority is a question of state law. Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1993) (citations and internal quotations omitted).

After establishing that one of these situations exists, the plaintiff must also show that the it was the municipality's actions that were the cause in fact and the proximate cause of

the constitutional violation.  <u>Arnold v. International Business Machines Corp.</u>, 637 F.2d 1350, 1355 (9th Cir. 1981); <u>see also City of Springfield v. Kibbe</u>, 480 U.S. 257, 266-68 (1987).

With its reply memorandum, the City filed a supplemental concise statement of facts.  Bartolome objects to the filing of this document and argues that the City's reply relies on evidence that was not previously produced and that is contrary to evidence that was previously produced in discovery.  The court notes that, although parties certainly may attach new declarations and additional exhibits to their reply memorandums, the filing of a supplemental concise statement of facts is not permitted by local rules.  <u>See</u> Local Rules 7.4, 56.1.

Because there is a discovery dispute regarding evidence relevant to the City's Motion, the court continues the City's Motion until the discovery dispute has been resolved.  The parties are directed to bring this issue to the Magistrate Judge.

V.   <u>CONCLUSION.</u>

For the foregoing reasons, the court denies the Officers' motion for summary judgment and continues the City's City's motion for summary judgment until May 27, 2008, at 9:45 a.m.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 8, 2008.



_/s/ Susan Oki Mollway_
Susan Oki Mollway
United States District Judge

**Bartolome v. City and County of Honolulu, et. al.**, Civ. No. 06-00176 SOM/LEK; ORDER DENYING OFFICERS' MOTION FOR SUMMARY JUDGMENT AND CONTINUING CITY'S MOTION FOR SUMMARY JUDGMENT