IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHRISTOPHER BARTOLOME, | ) | CIVIL NO. 06-00176 SOM/LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER GRANTING THE CITY'S |
| CITY AND COUNTY OF HONOLULU; | ) | MOTION FOR SUMMARY JUDGMENT |
| COLBY KASHIMOTO, Police | ) | |
| Officer; DARREN CACHOLA, | ) | |
| Police Officer; JOHN DOES 1- | ) | |
| 10, Police Officers, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING THE CITY'S MOTION FOR SUMMARY JUDGMENT

I.        INTRODUCTION AND BACKGROUND FACTS.

Plaintiff Christopher Bartolome filed a First Amended Complaint ("Complaint") against two Honolulu Police Department ("HPD") police officers, Colby Kashimoto and Darren Cachola (collectively, "the Officers"), and the City and County of Honolulu ("the City"), alleging police brutality and an alleged failure to provide appropriate medical assistance.

The court previously denied the Officers' motion for summary judgment but continued the City's motion for summary judgment to allow resolution of a discovery dispute.  See Order Denying Officers' Motion For Summary Judgment and Continuing City's Motion For Summary Judgment (April 8, 2008) at 27.  The

court has since continued the hearing on the City's motion twice more to ensure that the parties resolved discovery issues.

The court now considers the City's motion for summary judgment, in which the City argues that Bartolome has no evidence to support his claims against the City.  Bartolome asserts that the City is liable for the Officers' alleged beating of him because the City (1) failed to properly train officers in providing medical assistance (Count Two); (2) failed to train officers on the appropriate use of force (Count Three);[1] and (3) maintained a custom or policy that endorsed the use of excessive force by failing to investigate and discipline officers who assaulted citizens (Count Four).  Complaint ¶¶ 31-34.  The court grants the City's motion.

II.     LEGAL STANDARD.

The court incorporates here the summary judgment standard stated in the court's previous order filed in this case. See Order, April 8, 2008, at 3-5.

III.    FACTUAL BACKGROUND.

The factual background of this case was summarized in this court's previous order.  See id. at 5-12.  Those facts are

---

[1] At a hearing on April 7, 2008, Bartolome clarified that Counts Two and Three were primarily concerned with inadequate training even though the Complaint alleged that the City "failed to hire, supervise, train, or control" its police officers.

2

incorporated into this order and supplemented here only as necessary.

On September 6, 2005, HPD's Office of Internal Affairs received a statement by Bartolome complaining that he had been beaten by police officers.  See Pl.'s Ex. 6.  On October 27, 2005, Detective Calvin Tong from the Office of Internal Affairs interviewed Bartolome.  On January 12, 2006, Bartolome filed a formal written complaint with HPD's Office of Internal Affairs. See id.  Bartolome filed this lawsuit on March 28, 2006.

As of March 31, 2004, the date of the alleged beating, Officer Cachola had been with HPD for approximately eight years, while Officer Kashimoto had been with HPD for approximately six years.  Declaration of Darren Cachola (Jan. 22, 2008) ("Cachola Decl.") ¶ 3; Declaration of Colby Kashimoto (Jan. 16, 2008) ("Kashimoto Decl.") ¶ 3.  When hired, Officers Cachola and Kashimoto underwent HPD's screening process, and HPD did not find any evidence suggesting either had a tendency to be violent. Declaration of Dave Kajihiro (Jan. 16, 2008) ¶¶ 9-23.

Both officers satisfactorily completed the Recruit Training Course.  Pl.'s Exs. 10-11.  Officer Cachola attended Annual Recall Training sessions in five of the years between 1997 and the date of the incident, at least three of which included instruction on the use of force.  Officer Kashimoto attended

3

Annual Recall Training sessions in three of the years between 1999 and the date of the incident, two of which included instruction on the use of force.  Id.; Pl.'s Ex. 13; see also Declaration of Fabian Loo (Mar. 25, 2008) ("Second Loo Decl.") ¶¶ 6-7.

In the past five years, fifty-seven civil lawsuits alleging assault, false arrest, and/or the excessive use of force have been filed against HPD.  Pl.'s Ex. 1 (attached to Plaintiff's Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment (June 10, 2008) ("Supp. Opp'n").  Some of the cases have been settled, some have gone to trial, some have been dismissed, some are still in discovery.  See id. From 2002 to 2006, fifty-two complaints regarding the use of force were filed with HPD's Office of Internal Affairs, in thirty-two of which the officers were exonerated.  See Pl.'s Ex. 17.

With the exception of Bartolome's complaint, no civil lawsuits regarding assault, false arrest, and/or the excessive use of force have been filed against Officer Cachola or Officer Kashimoto, see Pl.'s Ex. 13, and, since March 24, 1999, no internal complaints regarding these same subject matters have been filed against the Officers.  Declaration of D. Scott Dodd (July 1, 2008) ¶ 3.

4

IV.      <u>ANALYSIS.</u>

Bartolome alleges that the beating is a result of the City's failure to train HPD officers properly and the City's custom or practice of inadequately investigating and disciplining officers who use excessive force.  The City moves for summary judgment on these claims.

The City argues that, as the Officers' conduct was reasonable, the City cannot be liable for it.  Because the court has already found that an issue of fact exists as to whether the Officers' conduct was reasonable, the City is unpersuasive on this point.  The City next argues that Bartolome has no evidence to support his inadequate training and inadequate investigation or discipline claims.  The court agrees with this second argument.

As this court noted in its previous order, local governmental bodies are "persons" that may be sued under § 1983.  <u>See</u> <u>Monell v. Dept. of Social Servs.</u>, 436 U.S. 658, 690 (1978).  However, counties are only liable for injuries that arise from an official policy or custom.  <u>Id.</u> at 694 (no respondeat superior liability); <u>accord</u> <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 385 (1989) (a county is liable under § 1983 only when its policy or custom causes the injury).

A municipality can only be held liable for the actions of its individual employees in one of three situations:

> First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy.  Whether a particular official has final policy-making authority is a question of state law.  Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1993) (citations and internal quotations omitted).

After establishing that one of these situations exists, the plaintiff must also show that the it was the municipality's actions that were the cause in fact and the proximate cause of the constitutional violation.  Arnold v. International Business Machines Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also City of Springfield v. Kibbe, 480 U.S. 257, 266-68 (1987).

Bartolome appears to be arguing that the Officers beat him pursuant to a "longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity."  See Gillette, 979 F.2d at 1346-47.

6

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." <u>Trevino v. Gates</u>, 99 F.3d 911, 918 (9th Cir. 1996).

While this court views the facts in the light most favorable to Bartolome, inferences drawn from the underlying facts must be reasonable.  <u>See</u> <u>Orin v. Barclay</u>, 272 F.3d 1207, 1213 (9th Cir. 2001) (in considering a motion for summary judgment, all reasonable inferences are to be drawn in favor of the nonmoving party); <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 631 (9th Cir. 1987) ("Inferences may be drawn from underlying facts that are not in dispute, such as background or contextual facts, and from underlying facts on which there is conflicting direct evidence but which the judge must assume may be resolved at trial in favor of the nonmoving party.  Assuming the existence of these underlying facts, however, an inference as to another material fact may be drawn in favor of the nonmoving party only if it is 'rational' or 'reasonable' and otherwise permissible under the governing substantive law.").  When a plaintiff fails to respond to a motion for summary judgment with sufficient evidence to show the existence of a genuine issue of material fact, summary judgment

will be granted to the defendant.  <u>T.W. Elec. Service</u>, 809 F.2d at 630.

A.   <u>Failure to Train.</u>

The "inadequacy of police training may serve as the basis for § 1983 municipal liability only where failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." <u>Canton</u>, 489 U.S. at 388.  A plaintiff must demonstrate a "conscious" or "deliberate" choice on the part of the municipality in order to prevail on a failure to train claim.  <u>Blackenhorn v. City of Orange</u>, 485 F.3d 463, 484 (9th Cir. 2007).

"A municipality can be liable under section 1983 only if its policy or custom caused the constitutional deprivation complained of." <u>Mateyko v. Felix</u>, 924 F.2d 824, 826 (9th Cir. 1991) (citing <u>Monell</u>, 436 U.S. at 690).  <u>See also</u> <u>Anderson v. Warner</u>, 451 F.3d 1063, 1070 (9th Cir. 2006) (noting that there must be a "direct causal link" between the county policy or custom and the plaintiff's constitutional injury for the county's § 1983 liability).  Accordingly, to hold a municipality liable based on its failure to train, a plaintiff must demonstrate that (1) a constitutional right was violated; and "(2) the City had a training policy that amounts to deliberate indifference to the constitutional rights of the

8

persons with whom its police officers are likely to come into contact; and (3) his constitutional injury would have been avoided had the City properly trained those officers." Blackenhorn, 485 F.3d at 484 (quoting Canton, 489 U.S. at 388-89 (internal quotations and alterations omitted)).

The City argues that it is entitled to summary judgment because Bartolome has no evidence that the City had a policy amounting to a failure to train or supervise its officers on the appropriate use of force or the provision of medical treatment. The City contends that it has an express policy prohibiting the excessive use of force, and that officers are disciplined if they violate this policy. See Declaration of Fabian M. Loo (Jan. 16, 2008) ("Loo Decl.") ¶ 11. Further, the City submits that officers undergo training when first hired, and that training continues on an annual basis thereafter. The training sessions address topics such as recent developments in the law, the appropriate use of force, and basic medical training. See id. ¶¶ 6-7; 14-15; see also Second Loo Decl. ¶ 5; Pl.'s Exs. 10-11, 13.

Bartolome responds that the City has no documents establishing that Officers Cachola and Kashimoto received training and that submission of a declaration[2] does not qualify

---

[2] Bartolome refers to the declaration of Sergeant Lee, but there is no Lee declaration in the record. There is a declaration of Fabian M. Loo containing information about training.

as sufficient evidence.  <u>See</u> Opp'n at 8-11; Supp. Opp'n at 1.
Bartolome also argues that there is a dispute regarding the
number of times Officers Cachola and Kashimoto received training
on the use of excessive force, and that this "clearly show[s]
there is a question of fact as to the adequacy of training"
provided by the City.  Plaintiff's Second Supplemental Memorandum
in Opposition to Defendant City and County's Motion for Summary
Judgment (July 2, 2008) ("Second Supp. Opp'n") at 2-3.  Bartolome
is unpersuasive on both these points.

At the summary judgment stage, courts will consider any
evidence that conforms to Rule 56 of the Federal Rules of Civil
Procedure.  <u>Block v. City of Los Angeles</u>, 253 F.3d 410, 419 (9th
Cir. 2001); <u>see also</u> <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036 (9th
Cir. 2003) ("At the summary judgment stage, we do not focus on
the admissibility of the evidence's form.  We instead focus on
the admissibility of its contents.").  Even under those liberal
principles, the court concludes that Bartolome fails to raise a
genuine issue of fact as to whether the City has a policy of
failing to train its officers.

Loo's declaration, made "under penalty of law" and
based on "personal knowledge," clearly satisfies Rule 56 of the
Federal Rules of Civil Procedure.  The court considers Loo's
declarations as evidence for purposes of this present motion.

The City has presented evidence that there is a written policy prohibiting the excessive use of force, that officers are periodically trained regarding the provision of medical treatment and the appropriate use of force, and that officers face discipline for the use of excessive force in violation of HPD policy.  In addition, the City produced the employee training histories of Officers Cachola and Kashimoto, which demonstrate that both officers received training on various subjects--including the use of force and provision of medical treatment--on an almost yearly basis.  See Pl.'s Exs. 10-11.  Bartolome does not submit evidence refuting the City's evidence.

Bartolome also argues that there is a genuine issue of material fact regarding the adequacy of the training provided to Officers Cachola and Kashimoto given the dispute over the number of times the Officers were trained on the use of force. Bartolome points out that Officers Cachola and Kashimoto did not receive such training every year, although Loo's declaration speaks of annual training.  Bartolome does not present any evidence demonstrating that the Officers' training was rendered inadequate because it was not annual.  Nor does it necessarily follow that the City had a policy of inadequate training if two officers were trained less than annually.

11

Although the issue of whether a municipality has displayed a policy of deliberate indifference is generally a question for the jury, see Oviatt By and Through Waugh v. Pearce, 954 F.2d 1470, 1478 (9th Cir. 1992), the Ninth Circuit has been clear that summary judgment for a municipality is proper on a failure to train theory when the plaintiff produces evidence showing only that the training of the officers involved in the alleged wrongdoing was inadequate.

In Blackenhorn, 485 F.3d 463, the Ninth Circuit affirmed the district court's grant of summary judgment for the city on the plaintiff's claim that the city had a policy of failing to train its officers on the use of exclusive force.  The plaintiff presented evidence that focused exclusively on the inadequate training of the officer involved in the alleged wrongdoing, which included performance evaluations, internal affairs interviews, and prior complaints against the officer. Id. at 484.  The Ninth Circuit concluded that "evidence of the failure to train a single officer is insufficient to establish a municipality's deliberate policy." Id.  The court went on to explain that, "absent evidence of a 'program-wide inadequacy in training,' any shortfall in a single officer's training 'can only be classified as negligence[,] [which is] a much lower standard of fault than deliberate indifference.'" Id. (quoting Alexander v. City and County of San Francisco, 29 F.3d 1355, 1367 (9th Cir.

12

1994)).  See also Alexander, 29 F.3d at 1368 ("By limiting her
proof to the adequacy of the training of a single officer,
plaintiff has failed to create a genuine issue of fact as to the
alleged deliberate indifference of the municipality.").

Similarly, in Davis v. City of Ellensburg, 869 F.2d
1230 (9th Cir. 1989), the Ninth Circuit granted summary judgment
for the city when the plaintiff presented evidence only
concerning three police officers.  In Davis, police officers
arrested Ronald Davis and, while he was physically restrained,
searched the surrounding area.  Davis began to choke and
subsequently died.  The plaintiff--the administrator of Davis's
estate--argued that the city had a policy of inadequate training,
inadequate medical treatment, or deliberate indifference to the
use of excessive force.  The plaintiff presented evidence only of
"the alleged unconstitutional actions of three low level police
officers that resulted in Ronald Davis's death" and did not
present any evidence regarding the inadequacy of the training of
the city's police officers in general.  The Ninth Circuit
concluded that summary judgment was proper because the plaintiff
based its attack on the city policy "solely on the occurrence of
a single incident of unconstitutional action by . . . non-
policymaking employee[s]."  Id. at 1233.

Evidence only of the training provided to Officers
Cachola and Kashimoto is insufficient to establish that the

13

City's entire training program for its police officers was inadequate.  Nor is the failure to provide medical treatment until at least three hours after the alleged beating sufficient to support the inference that the City had a policy of failing to train its police officers on the use of force and the provision of medical treatment.  Bartolome is relying on the very argument the Ninth Circuit rejected in Davis.

Bartolome's conclusory allegations fail to raise a genuine issue of material fact regarding the City's failure to train or supervise.  See State ex. Rel. Dep't of Transp. v. United States ex. Rel. Dep't of Transp., 561 F.2d 731, 733 n.4 (9th Cir. 1977) ("Conclusory allegations, unsupported by factual data, do not create a triable issue of fact.").  Rule 56(e)(2) of the Federal Rules of Civil Procedure states that "an opposing party may not rely merely on allegations or denials."  Instead, any evidence that the opposition submits must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  Because Bartolome fails to provide any evidence creating a genuine issue of fact regarding the City's alleged failure to train and supervise, the City's motion with regard to Counts Two and Three is granted.

B.   Failure to Investigate or Discipline.

Bartolome also claims that the City had a policy of failing to investigate excessive force complaints to discipline

14

officers who used excessive force.  A plaintiff "may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." Gillette v. Delmore, 979 F.2d 1342, 1349 (9th Cir. 1992).

Bartolome relies on HPD's internal investigation of his own complaint, arguing that HPD's Office of Internal Affairs did not complete its investigation into the alleged beating until after Bartolome had filed this lawsuit, and that the Officers were never disciplined for beating him.  See Opp'n at 4-5.  In addition, Bartolome submits a list of civil lawsuits and civilian complaints filed with HPD's Office of Internal Affairs alleging assault, false arrest, and/or excessive force and filed in the past five years.  See Second Supp. Opp'n at 4-5; Pl.'s Ex. 1 (attached to Supp. Opp'n); Pl.'s Ex. 17.  Bartolome argues that the internal investigations usually exonerated the officers, raising an issue of fact regarding the adequacy of the City's investigations and disciplinary procedures.

The alleged inadequacy of the investigation of Bartolome's complaint is insufficient to create an issue of fact as to whether the City has a policy of failing to properly investigate or discipline its officers.  Liability for an improper policy cannot be based on a single incident.  See, e.g., Trevino, 99 F.3d at 918; see also Meehan v. Los Angeles County,

856 F.2d 102, 107 (9th Cir. 1998) (two incidents insufficient to establish a custom).

Nor is Bartolome persuasive in arguing that the existence of other civil lawsuits or civilian complaints demonstrates that the City has a policy of inadequately investigating complaints or disciplining its officers.  The civil lawsuits are matters of public record, yet Bartolome presents no evidence from the public record supporting his claim of such a policy based on those other lawsuits.  And the cases Bartolome urges this court to follow with respect to this issue turn out to be inapposite.

Citing to <u>Lee v. City of Los Angeles</u>, 250 F.3d 668 (9th Cir. 2001), Bartolome argues that "[e]leven cases per year and fifty seven cases for the past five years should be warning bells that something is wrong in the implementation of policy and procedures, training and supervision of police officers."  Second Supp. Opp'n" at 4-5.  <u>Lee</u>, however, addressed the pleading requirements necessary to withstand a motion to dismiss and is clearly inapplicable to the City's motion for summary judgment. In <u>Lee</u>, the plaintiffs alleged that the city's lack of training and procedures regarding the handling of mentally incapacitated persons amounted to an "official policy, custom, or practice" that was deliberately indifferent to the constitutional rights of persons "likely to come into contact with the criminal justice

system." <u>Lee</u>, 250 F.3d at 682.  The Ninth Circuit reversed the district court's dismissal of claims against the city, concluding that the plaintiffs' § 1983 claims met the generous requirement of notice pleading.  "In this circuit, a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" <u>Id.</u> at 682-83 (quoting <u>Karim-Panahi v. Los Angeles Police Dep't</u>, 839 F.2d 621, 624 (9th Cir. 1988)).  At the summary judgment stage, however, Bartolome is required to provide more than the "conclusory allegations" that are sufficient to withstand a motion to dismiss.  Bartolome must provide sufficient evidence to create an issue of fact.  <u>See</u> <u>T.W. Elec. Service</u>, 809 F.2d at 630.

Bartolome's reliance on <u>Leer v. Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988), is similarly misplaced.  Citing to <u>Leer</u>, Bartolome argues that the City is liable for "acting with deliberate indifference in creating the condition which fostered the violation of constitutional rights."  Opp'n at 7.  But the Ninth Circuit in <u>Leer</u> was not concerned with municipal liability, as <u>Leer</u> addressed the issue of when state officials can be held liable in their <u>individual</u> capacities.  "A prisoner can state a section 1983 claim against prison personnel under the eighth amendment by establishing that the prison personnel acted with

17

'deliberate indifference' in creating the condition that violates the eighth amendment." <u>Leer</u>, 844 F.2d at 633.  Because this court is concerned with the City's liability, and not with individual liability, <u>Leer</u> is inapplicable.

More helpful than the cases Bartolome cites is <u>Strauss v. City of Chicago</u>, 760 F.2d 765 (7th Cir. 1985).  In <u>Strauss</u>, the plaintiff alleged, among other things, that the city had a custom and practice of exonerating police officers in internal investigations and continuing to employ officers that had used excessive force.  <u>Id.</u> at 766.  In support of his allegation, the plaintiff pled facts surrounding his own arrest and also submitted statistical summaries regarding complaints filed with the police department.  The Seventh Circuit affirmed the district court's dismissal of the complaint for failure to state a claim, concluding that the plaintiff alleged no facts suggesting that the city had a policy or custom of condoning officers' excessive use of force.  The Seventh Circuit noted that the statistical summaries the plaintiff produced did "not meet even the low pleading threshold established in federal courts."

> Plaintiff suggests that the police
> department's sustaining only six to seven
> percent of all registered complaints filed
> [for three years] "must give rise to a
> reasonable man's suspicions that defendant
> Chicago's methods of review are weighted to
> discourage positive findings."  This
> reasoning is specious, for the number of
> complaints filed, without more, indicates
> nothing.  People may file a complaint for

18

> many reasons, or for no reason at all.  That
> they filed complaints does not indicate that
> the policies that [the plaintiff] alleges
> exist do in fact exist and did contribute to
> his injury.

Id. at 768-69 (internal citation omitted).

The United States District Court for the Eastern
District of California has addressed a situation similar to the
one before this court.  In Hocking v. City of Roseville, 2008 WL
1808250 (E.D. Cal. April 22, 2008), the plaintiffs alleged that
the city had a custom of inadequately investigating and
disciplining its officers, and that this custom facilitated the
officers' allegedly unlawful actions toward the plaintiffs.  The
plaintiffs presented a chart summarizing each citizen complaint
alleged against the city's police officers in the past five
years, and the action taken by the city in response to each
complaint.  The plaintiffs argued that the city "acquiesced in a
custom that tolerated police misconduct by failing to adequately
investigate citizen complaints and discipline officers."  Id. at
*5.  The court concluded that the plaintiffs failed to create a
genuine issue of material fact regarding a city policy or custom
because "[s]tatistics of unsustained complaints of excessive
force and other police misconduct, without any evidence that
those complaints had merit, does not suffice to establish
municipal liability under § 1983."  Id.  The court noted that the
plaintiffs failed to present any evidence "suggesting that more

19

citizen complaints should have resulted in the discipline of
police officers or that the City conducted biased investigations
or otherwise ignored or improperly disposed of meritorious
citizen complaints."  Id.

The court finds the reasoning of Strauss and Hocking
persuasive.  A list of complaints against police officers,
without more, is insufficient to create an issue of fact
regarding the City's policy of inadequately investigating or
disciplining its police officers.  Significantly, Bartolome does
not allege or present evidence that the lawsuits and complaints
filed were meritorious but were nevertheless unsustained.
Instead, Bartolome only argues that the court should infer that
the number of lawsuits filed and the City's failure to sustain
complaints should create an inference of the City's inadequate
internal investigations and disciplinary procedures.  Such an
inference is not reasonable.

The court recognizes that, in discovery, Bartolome
asked for but was denied details of administrative complaints and
investigations, but nothing prevented Bartolome on the present
motion from pointing the court to successful civil lawsuits that
contrasted with internal HPD exonerations of officers.  After
all, the civil lawsuit information is a matter of public record.
Indeed, the discovery Bartolome was denied concerning internal
exonerations could not by itself have established a policy of

20

inadequate investigation or discipline.  Even had Bartolome had

such discovery in hand, Bartolome would have needed evidence that

the exonerations were inappropriate.  Such evidence could have

taken the form of, for example, civil judgments.  Bartolome does

not even suggest how he would have proven inappropriateness at

trial if he had obtained the evidence sought in discovery.

Bartolome may also be alleging that the City's failure

to investigate his own complaint adequately or to discipline

Officers Cachola and Kashimoto amounted to "ratification" of

their allegedly improper conduct.  Bartolome, however, has not

presented this ratification argument in his Complaint, and

neither party has submitted the findings and conclusions of the

investigation performed by the Office of Internal Affairs.  The

court notes in any event that Bartolome's allegations are

insufficient to support ratification.

In Edenfield v. Estatate of Willets, 2006 WL 1041724 at

*16 (D. Haw. April 14, 2006), this court concluded that municipal

liability under § 1983 requires "something more" than a failure

to reprimand.  See also id. at *16-17 (discussing Ninth Circuit

cases that support this proposition).

As this court has explained:

The law does not say that every failure to
discipline an officer who has shot someone is
evidence of a "whitewash" policy or some
other policy of "sham" investigations.  The
law does not say that, whenever an
investigative group accepts an officer's

21

> version over a victim's differing version,
> this acceptance establishes a policy for
> which a municipality may be held liable under
> § 1983.  If that were the law, counties might
> as well never conduct internal investigations
> and might as well always admit liability.
> But that is not the law.  The law clearly
> requires "something more."

Kanae v. Hodson, 294 F. Supp. 2d 1179, 1191 (D. Haw. 2003).

Here, there is no evidence that the investigation performed by the Office of Internal Affairs was inadequate or a sham.  See Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir. 1991) (concluding that the jury could find a custom based on the city's failure to reprimand when an expert testified that the investigation was a sham).  In fact, Bartolome only complains that the investigation was not completed (although it had been initiated) until after he filed this lawsuit and that the Officers were not punished.  These allegations are insufficient to establish the "something more" required under the ratification theory.  See Kanae, 294 F. Supp. 2d at 1191 (granting summary judgement for the city based on the ratification theory when the review board, despite disputed facts, concluded that the officer acted within regulations and would not be disciplined).

Because Bartolome fails to present evidence raising genuine issues of fact regarding the City's liability based on a failure to investigate or discipline theory, the court grants summary judgment to the City on Count Four.

22

C.   Magistrate Judge Kobayashi's Discovery Order.

In his Second Supplemental Opposition, Bartolome asks

to court to reverse Magistrate Judge Leslie Kobayashi's July 1,

2008, Clarification Order ("Clarification Order"), which is

essentially a restatement of her May 9, 2008, Discovery Order

("Discovery Order").   Bartolome requested that he be allowed to

"review [the] file cabinets and [citizen] complaints" that HPD

keeps in its Internal Affairs Division.   See Doc. No. 174 (June

27, 2008) at 2; see also Pl.'s Ex. 15.   In the Clarification

Order, Magistrate Judge Kobayashi stated that discovery of

internal affairs investigations was limited to investigations

concerning Officers Cachola and Kashimoto.   Bartolome argues that

he is entitled to internal investigations regarding excessive

force of all police officers.   Second Supp. Opp'n at 5.

As an initial matter, the court notes that there is an

issue as to whether Bartolome's appeal from the Magistrate

Judge's ruling is timely.   A party's appeal from a Magistrate

Judge's order must be filed within ten days from the entry of the

order.   See ILWU, Local 142, v. C. Brewer & Co., Ltd., 496

F. Supp. 2d 1179 (D. Haw. 2007) (discussing Local Rule 74.1).

Magistrate Judge Kobayashi filed her Discovery Order on May 9,

2008.   That order clearly said, "Reports about officers other

than those allegedly involved in Plaintiff's arrest are not

relevant and thus not discoverable."   Discovery Order at 8; see

23

also id. at 13 (requiring the City to provide discovery regarding disciplinary actions and misconduct allegations--involving Officers Cachola and Kashimoto--which alleged assault, false arrest, and/or excessive use of force).  Notwithstanding this clear language, Bartolome argued that the Discovery Order permitted discovery of internal affair investigations alleging excessive force with regard to all HPD officers.

This court bent over backwards to ensure it did not decide the City's motion before discovery disputes were resolved. Not only had this court earlier continued the hearing on the motion in light of discovery issues, it continued the hearing again to allow Bartolome to raise his understanding of the Discovery Order directly with Magistrate Judge Kobayashi.

On July 1, 2008, Magistrate Judge Kobayashi issued her Clarification Order, which simply restated her conclusion in the Discovery Order:

> Defendants are required to produce documents or other evidence regarding police misconduct allegations against Officers Colby Kashimoto and Darren Cachola, including Internal Affairs investigations, which arise out of complaint of assault, false arrest and/or excessive use of force by one or both of these officers for the period of time from March 24, 1999 to present.

As it turns out, the Clarification Order added nothing to what had already been clearly stated in the Discovery Order. The internal reports about HPD officers other than Officers

Cachola and Kashimoto were not subject to discovery.  In asking this court to reverse the July 1, 2008, Clarification Order, Bartolome is essentially challenging the Discovery Order filed on May 9, 2008, without explaining why he even needed clarification. An appeal of the Discovery Order is not only untimely at this point, it was untimely when, on June 23, 2008, this court permitted the parties to seek clarification.

This court concedes that it may have created confusion by permitting Bartolome to belatedly seek clarification.  The court therefore turns to the merits of Bartolome's appeal, concluding that, even if the appeal is deemed timely, it fails.

Pursuant to 28 U.S.C. § 636(b)(1), Rule 72(a) of the Federal Rules of Civil Procedure, and Local Rule 74.1, any party may appeal to the district court any pretrial nondispositive matter determined by a Magistrate Judge.  Such an order may be reversed by the district court judge only when it is "clearly erroneous or contrary to law."  The threshold of the "clearly erroneous" test is high.  See Boskoff v. Yano, 217 F. Supp. 2d 1077, 1083 (D. Haw. 2001) ("Under the 'clearly erroneous' standard, the lower court's ruling must be accepted unless, after reviewing the entire record, this Court is left with the definite and firm conviction that a mistake has been committed." (quotations and citations omitted)); Thorp v. Kepoo, 100 F. Supp. 2d 1258, 1260 (D. Haw. 2000) (the clearly erroneous standard is

"significantly deferential, requiring a definite and firm conviction that a mistake has been committed"); accord United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."); Burdick v. Comm'r Internal Revenue Serv., 979 F.2d 1369, 1370 (9th Cir. 1992) ("A finding of fact is clearly erroneous if we have a definite and firm conviction that a mistake has been committed.").

Bartolome cites to several cases as holding that "internal affair complaints in contested litigation [are subject to discovery] pursuant to protective orders."  Second Supp. Opp'n at 5.  None of these cases, however, stands for that proposition. More importantly, none of the cases addresses the issue of whether internal complaints of all police officers are discoverable.  See Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998) (denying a police officer's claim for qualified immunity when he ratified the use of excessive force by a subordinate); In re Grand Jury Subpoena, 75 F.3d 446, 448 (9th Cir. 1996) ("[T]he Fifth Amendment privilege, when applied to statements by police officers in internal affairs files, must focus on the use of those statements against the officers who gave them.  The statements are not privileged from production to

26

a subpoenaing authority.  But the Fifth Amendment guards against any improper use of them."); <u>Flanagan v. Munger</u>, 890 F.2d 1557, 1570 (10th Cir. 1989) (holding that the Fourteenth Amendment right to privacy of police officers was not violated by the police chief's disclosure of their personnel files because there is no absolute right to privacy in personnel files); <u>Denver Policemen's Protective Ass'n v. Lichtenstein</u>, 660 F.2d 432, 434 (10th Cir. 1981) (affirming the district court's decision compelling disclosure of police investigative files of police officers involved in an arrest that was the subject of the underlying criminal case).

Particularly troubling, however, is Bartolome's failure to fashion an appropriately limited and clearly stated request. The discovery dispute regarding internal affairs investigations appears to have had its origin in an interrogatory by Bartolome requesting a list of "all complaints filed against Honolulu Police officers for assaults and police brutality, including names of complainants, names of officers involved, disposition, and dates" for the past ten years.  Bartolome also asked that the City "[l]ist by name and address all police officers who have been disciplined for excessive force in the past 10 years, including dates of discipline and types of discipline."  <u>See</u> Pl.'s Ex. 9.

The City objected to the request as "overly broad" and as violating officers' privacy rights. The City also stated, "We do not keep statistics of this kind." Id.; see also Defendant City and County of Honolulu's Reply Memorandum in Response to Plaintiff's Opposition and in Support of Its Motion for Summary Judgment (Mar. 27, 2008) ("Reply") at 7. Upon receiving the City's objection, Bartolome made no timely effort to obtain a further response from the City. Id.

Before taking the matter to Magistrate Judge Kobayashi, the parties should have met to try to resolve the dispute themselves. See Local Rule 37.1 (requiring parties to confer in a "good faith effort" to resolve discovery disputes on their own before involving the court). Neither side initiated any discussion with the other side. Instead, Bartolome raised the dispute in opposing the City's motion, causing this court, in its order of April 7, 2008, to continue the hearing and send the parties to the Magistrate Judge about the matter. That is the pattern that the parties have followed throughout this case. Discovery disputes are raised in the context of dispositive motions, with no prior attempt to resolve the disputes. The parties instead seem dependent on a district judge's order that they take the matter to the unfortunate Magistrate Judge.

So this court is faced with the present situation: the hearing date for this motion has been continued three times,

28

Bartolome did not challenge Magistrate Judge Kobayashi's Discovery Order until many weeks had passed, and Bartolome missed a filing deadline, instead submitting a "notice of unavailability of counsel," see Doc. No. 161, as if simply going out of town extended the briefing schedule.

To further complicate matters, on April 11, 2008, after being ordered to see Magistrate Judge Kobayashi, Bartolome served Plaintiff's Second Request for Production of Documents to Defendant City and County of Honolulu, which asked the City to:

> 7.  Produce all documents referred to by Gerald K. Kanishiro [sic] in his declaration dated March 25, 2008 reflecting records of all complaints filed and all investigations performed against all police officers from 1999 to 2005.
>
> 8.  Produce all documents reflected in Gerald K. Kanishiro's [sic] declaration dated March 25, 2008 pertaining to computer records of complaints in his files against police officers, referred to in paragraphs 5 and 6 of his declaration, for the years 2000 through 2005.

See Pl.'s Ex. 2 (attached to Supp. Opp'n).

This document request was Bartolome's reaction to a clarification by the City of what information it had.  The City explained that physical copies of complaints were kept at HPD's Internal Affairs Division for thirty months and on the computer thereafter, although complaints were not broken down by subject matter.  See Declaration of Gerald K. Kaneshiro (Mar. 25, 2008) ("Kaneshiro Decl.") ¶¶ 5-6.  This caused Bartolome to say he was

"renewing" his request, although he was actually changing his request.  See Doc. No. 140 (April 22, 2008) at 2.  The City repeated its objection that Bartolome's request was overly burdensome, because it would require HPD's Internal Affairs Division to sort through approximately 5600 to 64000 complaints to "ferret" out those complaints alleging police brutality or excessive force.  See Doc. No. 141 (April 22, 2008) at 2.

Although Bartolome appears to be now complaining that the City has not produced documents responsive to his April 11 document request, that request could not have been the subject of Magistrate Judge Kobayashi's Discovery Order of May 9, 2008, because the City did not respond to the April 11 document request until after May 9, 2008.  See Pl.'s Ex. 1 (attached to Supp. Opp'n).

It is presently unclear whether Bartolome wants internal records concerning complaints of assault and police brutality going back ten years, or the Kaneshiro documents, or both.  Whichever of the preceding options is the one Bartolome is pursuing, Bartolome's request is overbroad.

This court finds no clear error in Magistrate Judge Kobayashi's determination that the ten-year request was over-inclusive.  Nor can the court see any justification for permitting discovery of all matters referred to by Kaneshiro, as those matters include complaints of all types.  They could, for

30

example, include complaints of police rudeness, of driving over the speed limit, or of parking in stalls reserved for disabled persons.  Such complaints would have no relevance to the present lawsuit.

This court can certainly conceive of more narrowly tailored discovery requests that might have been upheld by the Magistrate Judge.  Alternatively, this judge or the Magistrate Judge could take on the task of rewriting Bartolome's discovery requests.  But neither this judge nor the Magistrate Judge has any obligation to do that.  The Magistrate Judge committed no clear error given what Bartolome presented.  Had Bartolome asked for internal documents relating to successful civil lawsuits, and had Magistrate Judge Kobayashi declined to require such discovery, this court would likely find clear error.  But Bartolome did no such thing.  Bartolome did not identify successful civil suits at all.  Bartolome did not address the issue of any burden on the City.  While mentioning a protective order, Bartolome did not present a draft of a protective order. Bartolome stood on an overbroad request and asked for everything. The Magistrate Judge declined to do that, but gave Bartolome some of what he requested.  Bartolome is not now asking for a little more.  He asserts error in the order that did not give him everything.  This court sees no basis for finding clear error if a Magistrate Judge reasonably declines to rewrite a party's

discovery request to obtain the optimum result for that party. That is counsel's job.

This court is not, of course, saying that had Bartolome rewritten the discovery request, he would have found evidence that would have led to the denial of the present motion.  To the contrary, Bartolome had access to other civil lawsuits yet presented nothing to the court, suggesting he might have done the same with administrative records.  The court is simply saying that, on the record before this court, Bartolome shows no clear error by Magistrate Judge Kobayashi.  For this court to find otherwise would require this court to invent a duty for a judge to fashion new discovery requests when the ones presented are overbroad.  That might be a good idea, but it is not the law.

V.       OTHER MATTERS.

Bartolome asks this court to "strike the Declaration of Marie Gavignan as a witness because she is an attorney who was the lead attorney on this case and the supervisor of deputy corporation counsel."  Citing to Rule 3.7 of the Ethical Rules of Professional Responsibility, Bartolome also argues that Gavignan is prohibited from being a witness in this case because she is an attorney who represents the City.

Rule 3.7 permits a lawyer acting as advocate to testify to "uncontested issues."  Gavignan's declaration concerns the number and types of civil lawsuits that have been filed against

32

HPD, information that is in the public record and that Bartolome does not appear to dispute.  See Declaration of Marie Manuele Gavignan (Mar. 24, 2008) ¶¶ 5-7.  Moreover, this case has not reached the trial stage, so the court is not presently faced with having trial counsel appear as a trial witness.  Bartolome's request is denied.

Bartolome argues that, in the event this court affirms Magistrate Judge Kobayashi's Discovery Order, Kaneshiro's Declaration should be stricken.  Kaneshiro's declaration discusses HPD's policy of maintenance of records of all complaints filed with HPD against police officers and of internal investigations of HPD officers.  See Kaneshiro Decl. ¶ 5. Bartolome provides no legal basis for striking the declaration. Bartolome is not challenging Kaneshiro's description of HPD's record-keeping practices.  Indeed, Bartolome could have deposed Kaneshiro about those practices.  Rather, Bartolome is complaining that he has been denied access to the substance of HPD records.  As Kaneshiro's declaration does not touch upon that substance, there is no reason to strike his declaration.  The court denies Bartolome's request.

VI.      CONCLUSION.

The court grants the City's motion for summary judgment.  The only claims left for further adjudication are Bartolome's claims against the Officers.

The parties are prohibited from seeking a further continuance of the trial date without express approval from the trial judge.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 14, 2008.



_/s/ Susan Oki Mollway_
Susan Oki Mollway
United States District Judge

**Bartolome v. City and County of Honolulu, et. al.**, Civ. No. 06-00176 SOM/LEK; ORDER GRANTING THE CITY'S MOTION FOR SUMMARY JUDGMENT

34